<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY</u>

| | |
|---|---|
| RAYMOND ENGLISH,<br><br>             Plaintiff,<br><br>      v.<br><br>MISYS INTERNATIONAL BANKING SYSTEMS,<br>INC., ANDREW WHITE, & JERRY LUCKETT,<br>Individually,<br><br>             Defendants. | CIVIL ACTION NO. 05-2540<br>(DRD)<br><br><br><u>OPINION</u> |

<u>Appearances</u>

Matthew R. Grabell, Esq.
GRABELL & ASSOCIATES, P.A.
Two University Plaza, Suite 507
Hackensack, NJ 07601

    *Attorney for Plaintiff*

Maureen S. Binetti, Esq.
WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Centre Drive, Suite 900
Woodbridge, NJ 07095

Jyotin Hamid, Esq.
Lisa Howley, Esq.
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022

    *Attorneys for Defendants*

## *OPINION*

**DEBEVOISE, Senior District Judge**

Presently before the court is the motion of Defendants Misys International Banking

Systems, Inc.("Misys"), Andrew White ("White"), and Jerry Luckett ("Luckett" and together

with Misys and White, "Defendants") to dismiss the Complaint pursuant to FED. R. CIV. P.

12(b)(6) for failure to state a claim.  For the reasons set forth below, Plaintiff's CEPA count will

be dismissed with respect to his demotion and Defendant White, and Plaintiff's LAD count will

be dismissed with respect to his national origin claim and Defendants White and Luckett.

### *FACTS*

On or about April 4, 2005, Plaintiff Raymond English ("Plaintiff") filed an action in the

Superior Court of New Jersey, Law Division, Bergen County.   Plaintiff is an individual residing

in Montvale, New Jersey who was employed by Defendant Misys and worked in Misys's

Englewood Cliffs, New Jersey office.  Misys is a New York corporation engaged in the business

of developing and selling healthcare and banking software.  Misys is a subsidiary of a British

company.  At all relevant times, Defendant White was Chief Executive Officer of Misys and

Defendant Luckett was Product and Strategy Director of Misys.  According to the Notice of

Removal, White and Luckett are citizens and residents of the United Kingdom.

Plaintiff accepted Misys's offer of employment on or about April 10, 2003.  Misys had

offered Plaintiff the position of Head of Technology Confirmation Matching Product, with a base

salary of $172,000.00 per year plus a bonus based upon the profitability of the company and

performance.

In November 2003, Plaintiff identified and advised Misys of security issues that existed

with the Snowdrop HR System ("Snowdrop").  Snowdrop was designed to house employees'

confidential information and had already been deployed on the Internet.  Plaintiff's direct

manager, John Bertrand, asked Plaintiff to manage the remediation effort of Snowdrop.

Based upon Plaintiff's further review of Snowdrop, Plaintiff determined that the site

should be considered insecure and that any information designated as "restricted" or

"confidential" in nature should not be hosted on the website.  Plaintiff advised Misys that, in

addition to the potential for loss of data and risk of identity theft, there was specific legal

exposure to Misys in both the United Kingdom as well as the United States.

On or about March 10, 2004, after Defendant White became aware of Plaintiff's

concerns, Plaintiff was demoted to the position of CMS Program Manager and assigned a new

manager, Defendant Luckett.  Prior to his demotion, Plaintiff was asked to train Mark Davies, a

Briton, to assume responsibility for Technology of Confirmation Matching Product.  On or about

April 7, 2004, Luckett terminated Plaintiff's employment.

The Complaint contains two counts.  Count One alleges that Defendants engaged in

unlawful retaliation against Plaintiff in violation of the New Jersey Conscientious Employee

Protection Act ("CEPA"), N.J. STAT. ANN. § 34:19-1 et seq.  Specifically, Plaintiff alleges that

Plaintiff's demotion and termination constitute unlawful retaliatory action.  Count Two alleges

that Defendants engaged in unlawful discrimination in violation of the New Jersey Law Against

Discrimination ("LAD"), N.J. STAT. ANN. § 10:5-1 et seq.  Specifically, Plaintiff alleges that

Misys "systematically planned the terminations of its American management level employees by

hiring British employees to be trained by the Americans with the goal of replacing their

American mentors."  (Compl. ¶ 17.)  Plaintiff alleges that he was one of many such American

management level employees who were replaced by British staff.

On or about May 13, 2005, Defendants filed a Notice of Removal and thereby removed

Plaintiff's action to federal district court.

### *STANDARD OF REVIEW*

A motion to dismiss should not be granted unless "it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980);

Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 634 (3d Cir. 1989).  Allegations contained in

the Complaint will be accepted as true, Cruz v. Beto, 405 U.S. 319, 322 (1972), and Plaintiff

shall be "given the benefit of every favorable inference that can be drawn from those allegations."

Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991).  At a minimum, the Complaint must

give Defendants fair notice of what Plaintiff's claims are and the grounds upon which they rest.

Conley, 355 U.S. at 47.

### *DISCUSSION*

## I.  CEPA count

CEPA is designed "to protect and encourage employees to report illegal or unethical

workplace activities and to discourage public and private sector employers from engaging in such

conduct."  Abbamont v. Piscataway Bd. of Educ., 138 N.J. 405, 431 (N.J. 1994).  More

specifically, CEPA prohibits an employer from taking retaliatory action against an employee who

does any of the following:

> Discloses, or threatens to disclose to a supervisor or to a public body an activity,
> policy or practice of the employer . . . that the employee reasonably believes is in
> violation of a law, or a rule or regulation promulgated pursuant to law . . . ;

> Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
>
>> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ;
>>
>> (2) is fraudulent or criminal; or
>>
>> (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J. STAT. ANN. § 34:19-3(a), (c).  Plaintiff must show the following four elements: (1) he reasonably believed that an activity, policy or practice of his employer was in violation of a law, rule or regulation promulgated pursuant to law or was fraudulent or criminal; (2) he objected to or complained about the activity, policy or practice; (3) retaliatory action was taken against him (*i.e.*, adverse employment action occurred); and (4) there was a causal link between Plaintiff's action and the retaliatory action of the employer.  Reynolds v. TCM Sweeping, Inc., 340 F. Supp. 2d 541, 545 (D.N.J. 2004).  In this case, Defendants argue that English has failed to show the first three elements and that the individual defendants White and Luckett cannot be held individually liable.  As explained below, the motion to dismiss Plaintiff's CEPA count will be granted with respect to Plaintiff's demotion and allegation against White, but denied in other respects.

The Complaint states a CEPA claim sufficiently to survive a Rule 12(b)(6) motion. First, the Complaint shows that Plaintiff reasonably believed that Snowdrop violated a law or public policy protecting against identity theft.  The Complaint states that Plaintiff, after reviewing the Snowdrop system, determined that Snowdrop should be considered insecure and "advised Defendant Misys that besides the potential for loss of data and risk of identity theft,

there was specific legal exposures to Misys in both the United Kingdom as well as the United

States, *e.g.*, under the 1998 U.K. Data Protection Act and California Civil Code 1798.81.5

relating to 'Security of Personal Information.'" (Compl. ¶ 9.)  These allegations sufficiently show

that Plaintiff harbored a reasonable belief at the time he objected to the continued operation of

the Snowdrop system that such activity was "either illegal, fraudulent or harmful to the public

health, safety or welfare, and that there is a substantial likelihood that the questioned activity is

incompatible with a constitutional, statutory or regulatory provision, code of ethics, or other

recognized source of public policy."  Mehlman v. Mobil Oil Corp., 153 N.J. 163, 193 (N.J.

1998).  "Specific knowledge of the precise source of public policy is not required."  Id.

Defendants' argument that the Complaint fails to state that illegal activity had occurred or was

occurring is without merit.  It is clear from the Complaint that Plaintiff objected to the operation

of the Snowdrop system and believed that such activity exposed Misys to legal liability.  The fact

that the harm or legal exposure may occur or exist outside of New Jersey does not change the

analysis.  See id. at 188-89,192 (rejecting defendant's argument that CEPA should not apply in

cases where the employer's offensive conduct occurs out-of-state even though the discharge

occurs in New Jersey, and finding that a Japanese Petroleum Association guideline constituted a

clear mandate of public policy).

Second, the Complaint adequately states that English disclosed the insecurity of the

Snowdrop system and objected to its continued operation to Misys.  The Complaint states that

"Plaintiff identified and advised Defendant Misys of security issues that existed with the

Snowdrop HR System" (Compl. ¶ 8) and that "Plaintiff determined that the site should be

considered 'insecure' and Defendant Misys should not allow any information that was either

6

designated as 'restricted' or 'confidential' in nature to be hosted on the site." (Compl. ¶ 9.) The

Complaint need not mirror the language of CEPA in order to show that Plaintiff disclosed or

objected to the employer's activity, as Defendants seem to suggest in their moving brief when

they argue that the Complaint merely alleges that English "advised" Misys of his concerns but

did not state that English disclosed or objected to Misys's activity. At this stage, Plaintiff is

entitled to a favorable inference that by identifying and advising Misys of Snowdrop's security

problems, Plaintiff disclosed the problems and objected to its operation.

Third, Plaintiff has adequately alleged retaliatory action. "Retaliatory action" includes

the discharge, suspension or demotion of an employee. N.J. STAT .ANN. § 34:19-2(e). In this

case, Plaintiff was demoted and subsequently discharged. The Complaint states that "after

Defendant White became aware of Plaintiff's increased concerns regarding the Snowdrop

system, Plaintiff was demoted . . ." (Compl. ¶ 10.) and "in the ultimate act of retaliation,

Defendant Luckett unlawfully terminated Plaintiff's employment with Defendant Misys."

(Compl. ¶ 12.) English adequately alleges that the demotion and discharge were taken because

of his whistle-blowing activity; he need not plead all his evidence in the Complaint.

Although English may have adequately alleged that his demotion constituted retaliatory

action against him, any action that English may have against Defendants for his demotion is

barred by CEPA's one-year statute of limitations period. See N.J. STAT. ANN. § 34:19-5. The

Complaint alleges that English was demoted on or about March 10, 2004, which was more than

one year earlier than the date English filed this action, i.e., on or about April 4, 2005. Although it

may be true, as English argues, that retaliation under CEPA "need not be a single discrete

action," his demotion was a discrete action in this case. Under the definition of "retaliatory

action," demotion is explicitly listed as one example.  N.J. STAT.ANN. § 34:19-2(e).  See also

Borawski v. Henderson, 265 F. Supp. 2d 475, 486 (D.N.J. 2003) ("Retaliatory action under

CEPA is confined to completed . . . personnel actions that have an effect on either compensation

or job rank.")  (citation omitted).  Plaintiff has provided no reason to find that his demotion was

part of a pattern of retaliatory conduct rather than a discrete instance of retaliation.  Therefore,

Plaintiff's CEPA claim with respect to his demotion will be dismissed.

Lastly, individual defendant Luckett may be held individually liable.  New Jersey would

likely allow individual liability for supervisors under CEPA.  Sunkett v. Misci, 183 F. Supp. 2d

691, 716 n.12 (D.N.J. 2002).  See also Bowen v. Parking Auth. of Camden, No. 00-5765 (JBS),

2003 U.S. Dist. LEXIS 16305, at *85 (D.N.J. Sept. 18, 2003) ("CEPA . . . will not impose

liability on any employee, supervisor, commissioner, or attorney unless the plaintiff proves that

the defendant took an adverse employment action against him because of his whistleblowing.").

The Complaint adequately alleges that "in the ultimate act of retaliation, Defendant Luckett

unlawfully terminated Plaintiff's employment."  (Compl. ¶ 12.)  Therefore, the CEPA claim

against Luckett will not be dismissed.

With respect to individual defendant White, the CEPA claim will be dismissed.  As

discussed above, Plaintiff's CEPA claim based on his demotion is time-barred, and any claim

that Plaintiff may have had in this respect against White will be dismissed.  Because there is no

CEPA allegation against individual defendant White that is not time-barred, the CEPA claim

against White will be dismissed.

In summary, the motion to dismiss Plaintiff's CEPA claim will be granted with respect to

his demotion and Defendant White, but will be denied in all other respects.

## II.  LAD count

Plaintiff alleges that Defendants engaged in unlawful discrimination against him by replacing him with a British employee, and that Misys systematically planned to replace American management with British employees.  Plaintiff argues that the Complaint adequately alleges that he was the victim of national origin and/or nationality discrimination based on his status as an "American."  On the other hand, Defendants argue that Plaintiff's LAD claim is based on non-actionable citizenship discrimination.

> LAD states in pertinent part:
>
> It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:
> For an employer, because of the race, creed, color, *national origin*, ancestry, . . . or the *nationality* of any individual, . . . to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment . . . .

N.J. STAT. ANN. § 10:5-12(a) (emphases added).

Generally, an LAD claim is analyzed under Title VII standards.  Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 498 (3d Cir. 1999).  To succeed, English must initially establish a *prima facie* case of discrimination by showing that (1) he is a member of a protected class; (2) he was qualified for the position; and (3) nonmembers of the protected class were treated more favorably.  Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318-19 (3d Cir. 2000).  The adequacy of the Complaint with respect to the last two elements has not been questioned, and therefore the court will examine whether the first and dispositive element has been adequately pled.

The issue is whether "Americans" are a protected class under LAD.  English argues that

"Americans" are a protected class under either the national origin or nationality classification of the LAD.  In this case, the Complaint fails to state a discrimination claim based on national origin.  Under Title VII, "[t]he term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came."  Espinoza v. Farah Mfg. Co., 414 U.S. 86, 88 (1973).  The prohibition of discrimination based on "national origin" does not prohibit discrimination on the ground of citizenship.  Id. at 89 ("Congress did not intend the term 'national origin' to embrace citizenship requirements.").  For example, in Novak v. World Bank, No. 79-0641, 1979 U.S. Dist. LEXIS 11742 (D.D.C. June 13, 1979), the plaintiff argued that defendant had a policy of discriminating against United States citizens in violation of Title VII's prohibition against national origin discrimination.  The court held that such a claim – i.e., discrimination against U.S. citizens – alleges discrimination based only on citizenship and thus was barred by the holding in Espinoza.  Id. at *3.  Therefore, an employer may discriminate within the bounds of Title VII on the basis of citizenship but not on the basis of national origin.  Vicedomini v. Alitalia Airlines, No. 82 Civ. 2431 (CBM), 1983 U.S. Dist. LEXIS 11550, at *9-10 (S.D.N.Y. Nov. 18, 1983)   Here, Plaintiff's national origin discrimination claim must be dismissed because being "American" does not fall within the definition of "national origin," which is determined by looking only to his ancestry.  Id. at *11-12 (finding that "the national origin of a person born in the United States is determined by looking only to his ancestry").

        With respect to Plaintiff's discrimination claim based on "nationality," neither the LAD nor case law has provided a definition or offered an explanation to distinguish "nationality" from "national origin."  Several cases which discuss Title VII claims, however, use "national origin"

and "nationality" interchangeably.  See, e.g., Deravin v. Kerik, 335 F.3d 195, 202 (2d Cir. 2003)

(using "nationality" and "national origin" interchangeably when noting that "because racial

categories may overlap significantly with nationality or ethnicity, the line between discrimination

on account of race and discrimination on account of national origin may be so thin as to be

indiscernible . . . ."); Molerio v. FBI, 749 F.2d 815, 823 (D.C. Cir. 1984) (using "nationality" and

"national origin" interchangeably when noting that "[n]either the general policy nor its particular

application to Cuba is any evidence of discrimination on the basis of race or national origin, since

it would apply to any person, of any race or nationality, with relatives in the pertinent country.").

Although adopting a similar definition for "nationality" as for "national origin" in the LAD

context would provide consistency with its apparent interchangeability in the Title VII context,

the court hesitates to equate the definition of "nationality" with that of "national origin" because

to do so would be inconsistent with a "a cardinal principle of statutory construction that a statute

ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or

word shall be superfluous, void, or insignificant." E.g., Doe v. Chao, 540 U.S. 614, 630-631

(2004).

What, then, does "nationality" encompass if it is not to be construed as being synonymous

and coextensive with "national origin"?  "Nationality" has several definitions, one of which

appears to embrace the national origin concept – "a people having a common origin, tradition,

and language and capable of forming or actually constituting a nation-state" or "an ethnic group

constituting one element of a larger unit."  WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY

788 (1983).  In addition to the national origin definition, "nationality" is also defined as "a legal

relationship involving allegiance on the part of an individual and usually protection on the part of

11

the state" and "membership in a particular nation." Id.  "Nationality determines the political status of the individual, especially with reference to allegiance." BLACK'S LAW DICTIONARY 1025 (6th ed. 1990).  The "legal relationship" or "political status" definition, although not coterminous with citizenship, approaches such an understanding. See WEBSTER'S DICTIONARY 243 (defining citizenship as being the status of being a citizen, who is a member of a state or a native or naturalized person who owes allegiance to a government and is entitled to protection from it).  In this case, English claims that he suffered discrimination because he was "American." It appears that being "American" may fall under either citizenship or "nationality" and is therefore a prohibited basis of discrimination under LAD.  Cf. Miller v. Albright, 523 U.S. 420, 467 (1998) (noting that although nationality and citizenship are not entirely synonymous – one can be a national of the United States and yet not a citizen – the distinction has little practical impact today because the only remaining American nationals who are non-citizens are residents of American Samoa and Swains Island) (citation omitted).  Accordingly, English's discrimination claim based on his "nationality" will not be dismissed.

With respect to the individual liability of White and Luckett for allegedly violating LAD, the motion to dismiss will be granted because the Complaint does not allege any facts that might be construed as showing that they might be liable individually.

### CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss the CEPA count will be granted with respect to Plaintiff's claim based on his demotion and against White, and the motion to dismiss the LAD claim will be granted with respect to Plaintiff's national origin claim and against White and Luckett.  The motion to dismiss will be denied in all other respects.  An

appropriate order will be issued.

          /s/ Dickinson R. Debevoise
       Dickinson R. Debevoise, U.S.S.D.J.

July 19, 2005